Michael COOK, et al., Plaintiffs,

v.

The FRANKLIN COUNTY MUNICIPAL
COURT, et al., Defendants.

No. C-2-83-0700.

United States District Court,
S.D. Ohio, E.D.

April 28, 1983.

Thomas J. Conaty, Columbus, Ohio, for plaintiffs.

Ronald J. O'Brien, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

This action is brought in this Court by five persons who are presently defendants in the Franklin County Municipal Court in Columbus, Ohio, all of whom are charged with a violation of either a state statute or municipal ordinance prohibiting the operation of a motor vehicle while under the influence of alcohol. They do not raise any constitutional challenge to the statute or ordinance prohibiting such conduct, but they vigorously challenge the constitutionality of a very recent amendment to the Ohio implied consent statute, which became

effective March 16, 1983. That amendment requires a trial court to immediately suspend a person's driver's license if that person is charged with operating a motor vehicle while under the influence of alcohol, under the state statute or local ordinance, and if he or she has refused to consent to certain chemical tests or, having consented, the test results exceed certain levels of alcohol concentration and if any one of five enumerated conditions is found to be true, including, *inter alia*, that "the person's continued driving will be a threat to public safety." Each of these federal plaintiffs has entered a plea of not guilty to the offense with which he is charged and each has had his driver's license suspended until his trial on the merits of the charges has been completed or until the trial court determines, upon motion, that there was no probable cause for his arrest.

The federal plaintiffs contend that the new law and the procedures of the defendants Judges of the Franklin County Municipal Court following the enactment of this law result in a loss of their driver's licenses by means of a pretrial order that is made without the fundamental procedural safeguards of a fair hearing, including notice and the right to confront witnesses against them. They also contend that the statute and procedures thereunder impose a penalty on them before there is any determination of their guilt or innocence of the charge and further operate in a discriminatory manner, because those who plead guilty may obtain occupational driving privileges while those who plead not guilty are not afforded such privileges during the temporary suspension period. Those federal plaintiffs who have lost their licenses as a result of a finding that their continued driving will be a threat to public safety also contend that this particular part of the new law is void for vagueness.

These challenges to the new law, in the opinion of this Court, raise substantial and important constitutional issues under the Fourteenth Amendment of the Constitution of the United States which expressly prohibits any state from making or enforcing any law which deprives any person of life, liberty, or property without due process of law or denies to any person within its jurisdiction the equal protection of the laws. The federal defendants' motion to dismiss the plaintiffs' complaint in this Court does not address these constitutional issues but is based upon the federal law of abstention, primarily the doctrine established by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, which espouses a strong federal policy against federal court interference with pending state judicial proceedings. As the Sixth Circuit recently stated in *Parker v. Turner*, 626 F.2d 1 (6th Cir.1980),

> *Younger v. Harris* advanced the proposition that absent extraordinary circumstances, a federal court cannot enjoin a pending criminal trial in a state court. This doctrine is based on considerations of judicial economy and proper state-federal relations. Thus, in the typical *Younger* situation, a defendant who is being prosecuted in state court under a constitutionally suspect statute cannot go running into federal court seeking an adjudication of his rights and/or an injunction halting the pending criminal prosecution. The defendant must first seek relief within the state system.

*Id.* at 3 (footnotes omitted).

Although this Court is well aware of its responsibility to protect the constitutional rights of every person who seeks access to the federal court, our Constitution also binds every judge in every state court to exactly that same responsibility with respect to every person who asserts constitutional rights in the state courts as the federal plaintiffs in this case have done. This Court respects the courts of Ohio and is confident that the judges of that state will be faithful to their constitutional responsibilities. Application of the *Younger* doctrine rather than an abdication of the responsibilities of a federal court judge, would be an acknowledgment of the respect due the trial and appellate courts of Ohio and of the belief that, within the framework of the *Younger* doctrine, this Court should stay its hand from interfering

in pending judicial proceedings in the courts of that state. "[T]he National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. at 44, 91 S.Ct. at 750. The critical issue raised by the pending motion to dismiss, therefore, is whether the facts and circumstances of this particular case call for the application of the *Younger* doctrine of abstention.

## I.  THE STATUTORY BACKGROUND

### A.  O.R.C. § 4511.19

Ohio has long had a statute, O.R.C. § 4511.19, making it a criminal offense to operate a motor vehicle while under the influence of alcohol or any drug of abuse.[1] In a prosecution for violation of that statute or an ordinance of any municipality relating to driving a vehicle while under the influence of alcohol, the trial court may admit evidence on the concentration of alcohol in the defendant's blood at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance withdrawn within two hours of the time of the alleged violation. Depending upon the level of concentration disclosed by the test, certain presumptions are statutorily applied. Under the provisions of Ohio's Constitution and statutes, a person charged with a violation of O.R.C. § 4511.19 must be brought to trial within ninety days after arrest or service of summons.[2]

### B.  O.R.C. § 4511.191 PRIOR TO THE ADDITION OF SUBSECTION (K)

Ohio has also long had the "implied consent" statute, O.R.C. § 4511.191, which provides, in part, that any person who operates a motor vehicle upon the public highways in Ohio shall be deemed to have given consent to a chemical test or tests of his blood,

breath or urine for the purpose of determining the alcoholic content of his blood if arrested for the offense of driving while under the influence of alcohol. The statute prescribes the conditions under which such tests are administered and requires that the arrested person be advised of the consequences of refusing to submit to a chemical test. If a person refuses to submit to a chemical test, the registrar of motor vehicles, upon receipt of a sworn report of the police officer that he or she had reasonable grounds to believe the arrested person had been driving a motor vehicle upon the public highways of Ohio while under the influence of alcohol and that the person refused to submit to the test upon the request of the police officer and upon receipt of the required advice form, then suspends the person's license for a period of six months, subject to the review provided by the statute. The review consists of the person whose license has been suspended filing, within twenty days of the mailing of the suspension notice by the registrar, a petition in the municipal court or the county court alleging error in the action taken by the registrar or in one or more of the matters within the scope of the hearing provided for by the statute, *i.e.*, whether the police officer had reasonable ground to believe the person had been driving a motor vehicle upon the public highways while under the influence of alcohol, whether the person was placed under arrest, whether the person refused to submit to the test upon the request of the officer, and whether the person was advised of the consequences of refusal. If such a petition for hearing is filed, the suspension begins at the termination of the hearing or appeal unless the hearing or appeal results in a decision favorable to the person whose license is sought to be suspended.

In hearing the matter, the court considers not only an affidavit form prescribed

---

**1.**  O.R.C. § 4511.99(A) makes such an offense a misdemeanor of the first degree.

**2.**  Section 10 of Article I of the Constitution of Ohio provides, in pertinent part, that "In any trial, in any court, the party accused shall ...

have ... a speedy public trial...." O.R.C. § 2945.71(B) provides that a person charged with a first degree misdemeanor shall be brought to trial within ninety days after arrest or the service of summons.

by the statute but also "such additional, relevant, competent and material evidence as either the registrar or the person whose license is sought to be suspended submits."[3] The court then determines from the evidence whether the person has shown error in the action taken by the registrar or in one or more of the matters within the scope of the hearing, and if such error is shown the suspension is not imposed. If the person fails to show such error the court imposes the suspension.

Constitutional challenges to Ohio's implied consent statute as it existed before the addition of subsection (K) have been raised in state court proceedings provided for by the statute, and those challenges have been determined by the Ohio courts. For example, in *State v. Starnes*, 21 Ohio St.2d 38, 254 N.E.2d 675 (1970), the person whose license was suspended contested, at the suspension hearing in the Municipal Court, the validity of the suspension on the grounds that O.R.C. § 4511.191 violated the Constitution of the United States in that it permitted unreasonable searches and seizures in contravention of the Fourth Amendment, that it compelled a person to be a witness against himself in a criminal prosecution in contravention of the Fifth Amendment, and that it denied the person whose license was suspended due process of law in contravention of the Fourteenth Amendment.

## C. THE ADDITION OF SUBSECTION (K) TO O.R.C. § 4511.191

Without changing or repealing any of the provisions of § 4511.191, the Ohio General Assembly amended the statute by the addition of subsection K, effective March 16, 1983.[4] That subsection, in its entirety, states,

> If a person is charged with a violation of section 4511.19 of the Revised Code or of a municipal ordinance relating to operating a motor vehicle while under the influence of alcohol and if the results of a chemical test administered pursuant to this section indicate that the blood of the person contained a concentration of ten-hundredths of one per cent or more by weight of alcohol, a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath, or a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine, at the time of the alleged offense, or refuses to consent to a chemical test of his blood, breath, or urine to determine alcohol content under this section, the court shall immediately suspend the person's operator's or chauffeur's license or permit or nonresident operating privilege, if the court or referee at the initial appearance, which shall be held within five days from the date of the citation or arrest, determines that one of the following is true:
>
> (1) The person has previously been convicted of a violation of section 4511.19 of the Revised Code or of a municipal ordinance relating to operating a motor vehicle while under the influence of alcohol;
>
> (2) At the time of the arrest, the person's driver's or chauffeur's license or permit or nonresident operating privilege was suspended or revoked;
>
> (3) The person caused death or serious physical harm to another person;
>
> (4) The person failed to appear at the initial appearance;
>
> (5) The court or referee determines that the person's continued driving will be a threat to public safety.
>
> The suspension shall continue until the complaint alleging a violation of section 4511.19 of the Revised Code or of the municipal ordinance relating to operating a motor vehicle while under the influence of alcohol is adjudicated on the merits by the trial court, or until the trial court, upon motion, determines by a preponder-

---

3. O.R.C. § 4511.191(G).

4. Subsection J, which requires proof of financial responsibility and a $75.00 reinstatement fee before a person's license is returned following suspension, was also added to the statute. It is not relevant to this action.

ance of the evidence that there was no probable cause for the arrest.

## II. THE FACTS

### A. THE MUNICIPAL COURT PROCEEDINGS IN THE PRESENT CASE

By a stipulation of facts, the records of the Franklin County Municipal Court regarding the proceedings involving each of the federal plaintiffs have been submitted to this Court. From these records it appears that the arresting officer in each case issued a "ticket" or complaint charging each plaintiff with operating a motor vehicle while under the influence of alcohol, in violation of either § 4511.19 of the Ohio Revised Code or § 2133.01 of the Columbus City Code. The arresting officer also executed in each case an affidavit entitled "Arresting Officer's Affidavit For Pre-Trial Drivers License Suspension" which, according to the affidavit form, was required to be attached to the ticket with the defendant's driver's license and traffic record[5] and forwarded to the court. The officer's affidavit form reads as follows, with the appropriate blanks to be completed by the officer:

### ARRESTING OFFICER'S AFFIDAVIT FOR PRE-TRIAL DRIVERS LICENSE SUSPENSION

I, _____, being first duly sworn do depose and say that I arrested the above defendant on _____ 19____ for OMVI and that:

1. The defendant refused to consent to a chemical test of his _____ (insert blood, breath or urine) to determine alcohol content under Section 4511.191 ORC, or

2. The defendant consented to a chemical test of his _____ (insert blood, breath, or urine) administered pursuant to Section 4511.191 ORC, the results of which indicate the defendant's blood contained:

(A) a concentration of .10% or more by weight of alcohol in the blood, to wit: _____

(B) a concentration of .10 gram or more by weight of alcohol per 210 liters of breath, to wit: _____

(C) a concentration of .14 gram or more by weight of alcohol per one hundred milliliters of urine, to wit: ____ at the time of the alleged offense, and

3. The arresting officer submits the following facts to the court:

(A) The defendant has previously been convicted of OMVI under City or State law, see printout.

(B) The defendant's operators or drivers license was under suspension or revoked at the time of the arrest, see printout.

(C) The defendant caused death or serious physical harm to another person, to wit: _____.

(D) The defendant's continued driving will be a threat to public safety, to wit:

_____.

Although in each instance the affidavit and traffic record appear to have been filed and made available to defendants on or shortly before the date of their initial appearances, there is no indication in the record that when arrested a defendant is specifically notified that at the time of his or her initial appearance the court would conduct any type of hearing or consider a suspension of the defendant's license. At the arraignment of each of the federal plaintiffs and prior to being called upon to plead to the charge, each was given a "hearing" dealing with the question of whether his license should be suspended based upon the documents before the court. The presence of the arresting officer was not required by the court.

The license suspension hearing in each case was brief, but of critical importance is the fact that there is absolutely no indication in the records and transcripts of those

---

5. The traffic record submitted with the affidavit consisted of a computer printout from the Bureau of Motor Vehicles that includes, along with other data, information concerning a defendant's prior traffic offenses.

proceedings that defendants were foreclosed or restricted in any manner from raising the constitutional issues that they now raise in this Court. Indeed, the transcripts show that in *every* case, defendant's counsel did in fact either object to the suspension of the license without "a due process hearing" or orally move for "a due process hearing." In addition, in at least one case, the court continued the arraignment at counsel's request so the defendant could file a formal motion to dismiss based upon the constitutional claim. While the transcripts of those cases where the suspension was based in part on a finding that the defendant constituted a threat to public safety do not indicate a challenge to the suspension on the ground that the statute is void for vagueness, certainly such a claim could have been made along with the claim that the defendant was entitled to a hearing meeting the requirements of procedural due process.

While this much is clear from the transcripts, it is equally clear that in dealing with this new statute some confusion may well exist among the Judges of the Municipal Court as to whether the statute contemplates the type of hearing demanded by defendants. A brief review of the record in each case illustrates both the fact that the due process objection was brought to the attention of the trial court and the manner in which that objection was considered or not considered by the Judge.

### 1. *Therron C. Woerner*

Mr. Woerner was arrested on March 20, 1983. At the time of his arraignment on March 21, 1983, the court also held a "pretrial license suspension hearing" that consisted of the following. In support of suspension, the attorney for the City advised the court that the officer's affidavit indicated both a test of above .10 and a prior OMVI conviction. Defendant's attorney then entered several objections. First, he orally moved the court to allow a due process hearing with testimony allowed as to the alleged prior conviction. Second, he objected to the entire proceeding as an action in a criminal case proposing some penalty prior to an adjudication of the guilt or innocence of the defendant. Third, he objected to the rules of evidence not being conformed with, in that the court was considering matters not introduced as evidence, not attested to and not sworn to. Accordingly, he asked that the proceeding be dismissed. The court responded by stating, "The Court will note your exceptions, and privileges will be suspended under 4511.191(K)."

### 2. *Michael R. Cook*

Mr. Cook was arrested on March 18, 1983. His March 21, 1983, arraignment also included a "pretrial license determination." The attorney for the City advised the court that Mr. Cook had a .24 test and that no other factors were present "except whether the court finds that continued driving is a threat to public safety." Although Mr. Cook was not then represented by counsel, the judge gave him an opportunity to consult with a member of the Franklin County Public Defender's Office, who then spoke on his behalf. The attorney argued that the sole ground for suspension, the officer's allegation that the defendant is a danger to public safety, supported only by the same facts that gave rise to the stop, was an inadequate ground for suspension of a license. She also noted the importance of license privileges to the defendant's employment. In response, the court stated, "The court will note your exceptions. Driving privileges will be suspended under 4511.191(K)." The attorney then objected to the suspension without a due process hearing, to which the court responded, "sure."

### 3. *David L. Craig*

Mr. Craig was arrested on March 31, 1983. At his arraignment on April 4, 1983, the court found the consideration of the suspension issue "as a proceeding, under the statute." The court noted the officer's affidavit indicating a refusal to consent to a blood test, the officer's statement that the defendant was involved in a one-car

accident, the officer's allegation that the defendant is a threat to public safety, and a printout of the defendant's record indicating an implied consent suspension and assured clear distance and improper turn violations. The defendant's attorney then orally moved for a due process hearing at which the defendant would have the opportunity to cross-examine. After hearing the prosecutor's position on the motion, the court found that there had been a refusal and, based upon "the information from the officer, the record, and the affidavit indicating some negative driving history and a property damage and personal injury situation," that statutory grounds existed for a license suspension. He further stated, "you may have a further hearing on the probable cause matter."

### 4. William H. Pemberton

Mr. Pemberton was arrested on April 2, 1983. At his arraignment on April 7, 1983, the court noted that the affidavit of the arresting officer indicated a breath test result of .117 and a prior OMVI. The city's attorney requested the court to suspend the license under the section of "threat to public safety." The defendant's attorney then moved for a due process hearing on the license suspension matter. Arguing specifically that the defendant had never been convicted of OMVI, Mr. Pemberton's attorney sought to present evidence on that point. The court responded as follows,

> The due process hearing to which counsel refers is provided for in the statute. The statute calls for the filing of a petition for the purpose of testing the probable cause. That motion may be filed by counsel under Rule 3.04 of the court rules of this court.
>
> The special statutory proceeding on for today is held by the Court based upon the documentation previously referred to; and in reviewing that documentation, the Court does find that the officer has indicated a breath test above specified limits. And although the officer has indicated a prior conviction of OMVI, which the Court does not find borne out by the print-out, the print-out does indi-

cate a history of operation which is negative within the direction of the statute, and the Court is concerned about the narrative used by the officer in this case and does find this to be a case for pretrial suspension and will so enter.

The defendant's attorney then inquired whether "the due process hearing we are talking about ... it is the court's policy to set that hearing on the date of jury trial, which is also the date of the end of the suspension—is that correct?" The court's response: "I am not aware of such policy. I have been setting mine on my own docket earlier than that."

### 5. James D. Sears

Mr. Sears was arrested on April 9, 1983. At his arraignment on April 11, 1983, Mr. Sears' attorney requested a continuance, which the court granted but only as to the actual arraignment. Proceeding on the license suspension issue the court found the defendant had tested at .25 blood alcohol content. Mr. Sears' attorney asked for a due process hearing on the suspension and objected to the introduction of the evidence as to a test in that it did not conform with the rules of evidence. The court responded as follows: "Don't know that the legislature established any such matters in this kind of proceeding. Court will find that continued driving would be a threat to public safety." The defendant's driving rights were suspended.

On the day of the arraignment two days later, Mr. Sears' attorney filed a written motion to dismiss the case. The court indicated it would not consider the motion until the prosecution had had time to respond. There is nothing presently before this Court that would indicate that the defendant's motion has yet been ruled upon.

None of the plaintiffs in the present action has appealed the order of the Franklin County Municipal Court suspending his license or sought any stay of the order pending appeal.

### B. THE FEDERAL COURT PROCEEDINGS IN THE PRESENT CASE

On April 13, 1983, plaintiffs filed a complaint in this Court seeking preliminary and

permanent injunctive and declaratory relief. Their action is brought pursuant to 42 U.S.C. § 1983, and the jurisdiction of this Court invoked pursuant to 28 U.S.C. § 1343(3). On the same date, plaintiffs filed a motion for a temporary restraining order. Defendants responded with a memorandum in opposition to plaintiffs' motion and a motion to dismiss plaintiffs' action. On April 15, 1983, the Court conferred with counsel for plaintiffs and defendants. The Court has had the benefit of thorough briefing of the relevant issues by both parties.

### III. PLAINTIFFS' CLAIMS

Plaintiffs challenge O.R.C. § 4511.191(K) as unconstitutional both on its face and as applied. The assertion of facial invalidity is based on the following asserted deficiencies: (1) the imposition of a penalty prior to adjudication of guilt or innocence deprives the federal plaintiffs of their Fourteenth Amendment due process rights; (2) the statute is unconstitutionally vague and thus a denial of plaintiffs' due process rights; (3) the unavailability of occupational driving rights for pretrial suspensions, which are available for post-conviction suspensions, denies plaintiffs equal protection of the law; (4) the statute's failure to provide for notice to an accused of the suspension proceeding is a denial of due process; (5) the absence of any provision for a hearing at which evidence can be presented or witnesses confronted is a denial of due process; (6) the statute's failure to provide for appeal of the license suspension is a denial of due process.

In addition, plaintiffs argue that the defendants, the Judges of the Franklin County Municipal Court, in applying O.R.C. § 4511.191(K), have devised and instituted procedures that render it unconstitutional as applied. They assert that the application of the statute violates plaintiffs' due process rights in three respects: (1) state defendants are not allowed a hearing with proper due process; (2) there is no opportunity to confront witnesses; (3) in making suspension determinations the courts consider unsworn written statements against the accused. Finally, they assert a denial of equal protection of the laws and due process based upon the allegation that pretrial suspensions ordered by the defendant Judges are more severe than post-conviction suspensions.

### IV. DISCUSSION

#### A. STATUTORY INTERPRETATION

The Court notes at the outset that the subsection of the Ohio statute here challenged, O.R.C. § 4511.191(K), has been in effect less than six weeks. Ohio trial courts are only beginning to interpret and implement the newly enacted statute, including the nature of the "determination" required for a pretrial suspension of an individual's driver's license. Furthermore, the Court is aware of no Ohio appellate court decisions interpreting the various provisions of the statute.[6]

The extent of plaintiffs' constitutional challenges could well depend upon the construction and interpretation given to the statute by the Ohio courts. To illustrate, plaintiffs argue that both the statute itself and the application thereof are unconstitutional because the statutory procedure for a judicial determination on the suspension issue does not comport with procedural due process. Given the opportunity, however, an Ohio court might construe the term "determines," as it is used in subsection (K), to require a hearing of the type sought by the federal plaintiffs. Another example is plaintiffs' equal protection claim which is based upon their assertion that occupational driving privileges are not available to those whose licenses are suspended pursuant to subsection (K). Only one of the plaintiffs in the present case requested such privileges; his request was denied. While it may or may not be the uniform practice of certain judges not to grant such privileges during the temporary suspension

---

**6.** Defendants have represented to this Court that appeals from license suspensions under the new amendment have been taken by other defendants in other cases and are currently pending.

period, the question of whether such privileges may legally be granted during this period is again a matter of statutory interpretation in the first instance.

Particularly important to this case is plaintiffs' claim that subsection (K) of O.R.C. § 4511.191 does not provide for an appeal to another tribunal of the license suspension. To this Court's knowledge, however, there has been no judicial determination by an Ohio court that the license suspension is not a "final order" within the meaning of Ohio law and capable of appellate review. The Court notes in this connection that O.R.C. § 2505.02 includes as a final order that may be appealed "an order affecting a substantial right made in a special proceeding." Furthermore, the defendants in this case, through the city prosecutor, have represented that as to suspension orders under § 4511.191(K), "it would appear that Ohio Appellate review is available." For the purposes of the discussion that follows, this Court relies upon that representation and assumes that appellate review of suspension orders is available. This issue is of particular importance in determining the applicability of the *Younger* doctrine and also whether there exist "extraordinary circumstances" that would bring this case within an exception to the *Younger* doctrine.

## B.  THE YOUNGER ABSTENTION DOCTRINE

In *Younger v. Harris, supra,* and its companion cases,[7] the United States Supreme Court examined the principles governing federal judicial intervention in pending state criminal cases, and unequivocally reaffirmed "the fundamental policy against federal interference with state criminal prosecutions." 401 U.S. at 46, 91 S.Ct. at 751. As the Supreme Court noted in *Younger,* "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue

such injunctions." *Id.* at 45, 91 S.Ct. at 751.

Two basic principles underlie the *Younger* doctrine of abstention. First, there is the "basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris,* 401 U.S. at 43–44, 91 S.Ct. at 750. Even more important, however, is the notion of "comity" between the federal and state judicial systems. The concept of comity includes

> "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."

*Id.* at 44, 91 S.Ct. at 750. Thus, comity requires "sensitivity to the legitimate interests of both State and National Governments," and although the national government is anxious to vindicate and protect federal rights and federal interests, it must do so "in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44, 91 S.Ct. at 750. Included in the concept of "comity" is the understanding that "[m]inimal respect for the state processes ... precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116, (1983). Instead, the federal system adopted by the framers of our Federal Constitution acknowledges that the judicial systems of the several states are competent to determine constitutional issues and that the state courts are obligated to preserve and safeguard federal constitutional

---

7.  *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *Dyson v. Stein,* 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); *Byrne v. Karalexis,* 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

rights.[8] *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975).

With these two basic principles in mind, the *Younger* Court determined that federal courts must refrain from interfering with ongoing state criminal proceedings that afford the federal plaintiffs an adequate opportunity to raise the constitutional claims asserted in the federal case, unless extraordinary circumstances exist that would create an exception to this rule of abstention. *Younger v. Harris*, 401 U.S. at 45–49, 91 S.Ct. at 751–753.

One of the pertinent inquiries which a court must make when determining whether the *Younger* doctrine should be applied is whether the state proceedings sought to be enjoined "afford an adequate opportunity to raise the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 430, 99 S.Ct. 2371, 2381, 60 L.Ed.2d 994 (1979). If the federal plaintiffs had an *opportunity* to present their federal claims in the state proceedings, "[n]o more is required to invoke *Younger* abstention." *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977). The federal plaintiffs "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973), and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." *Id.*

If each of the prerequisites for abstaining under the *Younger* doctrine is found to exist, a federal court is still obligated to carefully examine the circumstances of the case in order to determine if the case falls within one of the narrow exceptions to *Younger.* Only if an exception applies to the case should the federal court then retain jurisdiction in order to grant injunctive relief. *Juidice v. Vail, supra; Huffman v. Pursue, Ltd, supra. See also, Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d

558 (6th Cir.1982). Among the exceptions are

> those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' "

*Huffman v. Pursue, Ltd.*, 420 U.S. at 611, 95 S.Ct. at 1212.

Additionally, the *Younger* doctrine of abstention does not prevent federal court action if there exist other "extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Younger v. Harris*, 401 U.S. at 53, 91 S.Ct. at 755. In *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), the Supreme Court explained the type of "extraordinary circumstances" that might constitute the great, immediate, and irreparable harm sufficient for a federal court to enjoin an ongoing state judicial proceeding:

> Only if "extraordinary circumstances" render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process. The very nature of "extraordinary circumstances," of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be "extraordinary" in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

---

**8.** Art. VI of the United States Constitution firmly states that "the Judges in every State shall be bound" by the United States constitution, laws, and treaties.

*Id.* 421 U.S. at 124–25, 95 S.Ct. at 1530–31. The Supreme Court has made it clear that the "cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" is not the type of injury that could justify federal interference. *Younger v. Harris,* 401 U.S. at 46, 91 S.Ct. at 751. Likewise, facial invalidity of a statute is not itself the type of exceptional circumstance that would justify federal interference with a state judicial proceeding. *Huffman v. Pursue, Ltd.,* 420 U.S. at 602, 95 S.Ct. at 1207. Nor do possibly erroneous applications by the trial courts of constitutional standards normally amount to the irreparable injury necessary to justify a disruption of orderly state proceedings. *Id.* at 609 n. 20, 95 S.Ct. at 1210 n. 20.

The *Younger* doctrine of abstention is clearly not limited in its application to cases involving state criminal proceedings. Later Supreme Court decisions have held that the policies underlying the *Younger* doctrine of abstention are fully applicable to noncriminal state judicial proceedings when those proceedings involve important state interests. *Moore v. Sims,* 442 U.S. at 423, 99 S.Ct. at 2377; *Juidice v. Vail, supra; Huffman v. Pursue, Ltd., supra.* Whether the state proceeding "is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is 'an offense to the State's interest ... likely to be every bit as great as it would be were this a criminal proceeding, ....'" *Juidice v. Vail,* 430 U.S. at 335–36, 97 S.Ct. at 1217. Thus, the *Younger* doctrine of abstention applies to all cases involving pending state judicial proceedings that implicate important state interests and which do not fall within the narrow exceptions to the doctrine.

In order to determine whether this Court must abstain from deciding the constitutional claims asserted in the present case, this Court must address four issues. First, this Court must determine whether the state pretrial license suspension actions constitute ongoing state judicial proceedings. Second, this Court must decide if those proceedings implicate important state interests. Third, the Court must find there is an adequate opportunity in the state proceedings to raise constitutional challenges. Fourth, this Court must be satisfied that the circumstances of the present case do not fall within one of the narrow exceptions to the *Younger* doctrine of abstention.

## C. APPLICATION OF THE YOUNGER DOCTRINE

### 1. *Ongoing State Proceeding*

■ Plaintiffs contend that the *Younger* doctrine of abstention is not applicable to this case because the proceedings at which their driver's licenses were suspended pursuant to O.R.C. § 4511.191(K) have been concluded. Plaintiffs further characterize the proceedings under O.R.C. § 4511.-191(K) as being civil and administrative in nature and independent of the criminal proceedings under O.R.C. § 4511.19.

This Court need not determine the exact nature of the proceedings under O.R.C. § 4511.191(K) or the relationship of those proceedings to the criminal proceedings under O.R.C. § 4511.19. Whether those proceedings are denominated civil, quasi-criminal, or criminal, it is apparent to this Court that they are "ongoing proceedings" as that term has been interpreted by the United States Supreme Court. In *Huffman v. Pursue, Ltd., supra,* the Supreme Court was confronted with the task of determining what constituted a "pending state court proceeding" as that term is used in *Younger.* In *Huffman* the appellant county officials had instituted a proceeding under Ohio's public nuisance statute in state court against the appellee's predecessor as operator of a theater displaying pornographic films. The state trial court found that the defendant in the state proceeding had displayed obscene movies and, accordingly, rendered judgment in favor of the county officials who ordered the theater closed for a year and the seizure and sale of the personal property used in the theater's operation. Appellee, which had taken over operation of the theater prior to

judgment, decided not to pursue an appeal within the state court system. Instead, the appellee immediately filed suit in federal district court under 42 U.S.C. § 1983. The district court declared the Ohio nuisance statute unconstitutional on First Amendment grounds and enjoined the execution of the state court's judgment.

On appeal, the Supreme Court noted that *Younger* and subsequent cases used the term "pending proceeding" to distinguish state proceedings that had already been commenced from those that are merely incipient or threatened. The *Huffman* Court also noted that the state judgment had no doubt become final. However, the Supreme Court felt that the characterization of the state court's judgment as final was unimportant because "a necessary concomitant of *Younger* is that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in *Younger*." 420 U.S. at 608, 95 S.Ct. at 1210.

> Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings just as surely as they would if such intervention occurred at or before trial. Intervention at the later stage is if anything more highly duplicative since an entire trial has already taken place, and it is also a direct aspersion on the capabilities and good faith of state appellate courts. Nor, in these state-initiated nuisance proceedings is federal intervention at the appellate stage any the less a disruption of the State's efforts to protect interests which it deems important. Indeed, it is likely to be even more disruptive and offensive because the State has already won a nisi prius determination that its valid policies are being violated in a fashion which justifies judicial abatement.
>
> Federal post-trial intervention, in a fashion designed to annul the results of a state trial, also deprives the States of a function which quite legitimately is left to them, that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction. We think this consideration to be of some importance because it is typically a judicial system's appellate courts which are by their nature a litigant's most appropriate forum for the resolution of constitutional contentions. Especially is this true when as here, the constitutional issue involves a statute which is capable of judicial narrowing. In short, we do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts. We therefore hold that *Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies.

*Id.* at 608–09, 95 S.Ct. at 1210 (footnotes omitted). The Supreme Court also noted that the federal plaintiff may not avoid the application of the *Younger* doctrine by simply failing to comply with the procedures for perfecting an appeal within the state judicial system. *Id.* at 611 n. 22, 95 S.Ct. at 1211 n. 22.

The reasoning of the Supreme Court in *Huffman* is equally applicable to the present case. Here, a statutory suspension hearing has taken place in which a defendant has raised constitutional issues in the state trial court. The trial court, over objection based on constitutional grounds, has deprived the defendant of a protectable property interest. As the Supreme Court observed, it is typically a judicial system's appellate courts which are by their nature a litigant's most appropriate forum for the resolution of constitutional contentions, and especially is this true when the constitutional issues involve a statute capable of judicial narrowing. As emphasized earlier in this opinion, the newly enacted subsection (K) of O.R.C. § 4511.191 is capable of judicial construction that could eliminate certain of the constitutional issues asserted by the defendants in the Municipal Court

proceedings. Under these circumstances, this Court should not substitute itself for Ohio's appellate courts.

Even if this Court accepts the plaintiffs' position that the license suspension proceedings are independent from the criminal prosecutions and have no effect on those prosecutions, the Court still feels that the Supreme Court has interpreted the term "pending state court proceeding" to encompass the factual circumstances presently before this court. Under O.R.C. § 2505.02 an order affecting a substantial right made in a special proceeding is a final order that may be reviewed by the appellate courts of Ohio. The Ohio Supreme Court has stated that,

> "a prime determinant of whether a particular order is one made in a special proceeding is the practicability of appeal after final judgment. A ruling which implicates a claim of right that would be irreparably lost if its review need await final judgment is likely to be deemed a final order."

*Bernbaum v. Silverstein*, 62 Ohio St.2d 445, 447, 406 N.E.2d 532 (1980). Thus, it would appear, as defendants assert and represent to this Court, that orders of the Municipal Court in statutory license suspension proceedings may very well be appealable under Ohio law.

In the present case, although a trial court has suspended each of the plaintiffs' driver's licenses pending a trial on the merits of the charges against each of the plaintiffs, the plaintiffs have not attempted to seek state appellate remedies before seeking relief in this Court. The record is clear that none of the plaintiffs in this case has filed an appeal of the order suspending his driver's license, *see* Ohio R.App.P. 3, 4 and 5, although other persons whose licenses have been suspended under the new law have filed appeals from similar orders in other cases. Nor has any defendant sought a stay or injunction pending appeal. *See* Ohio R.App.P. 7. The fact that the plaintiffs may have voluntarily elected to forego their opportunities of appeal under Ohio law does not affect the status of the

license suspension proceeding as a "pending state court proceeding."

The Court does not agree that *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), supports the plaintiffs' position that *Younger* is inapplicable to this case. In *Gerstein* the Supreme Court noted that the district court's injunction was not directed at the state prosecutions as such, but only at the legality of a pretrial detention without a judicial hearing. The Supreme Court did not rest its decision on the fact that the injunction would not affect the pending state court proceedings; instead, the *Gerstein* decision rested upon the fact that the legality of the pretrial detention was an issue that could not be raised in defense of the criminal proceeding and thus the federal plaintiff never would have had an opportunity to press his claim in the state courts. *See, Juidice v. Vail*, 430 U.S. at 336–37, 97 S.Ct. at 1217–18; *Moore v. Sims*, 442 U.S. at 431–32, 99 S.Ct. at 2381.

*Gerstein,* therefore, involved the *absence* of a pretrial hearing and, because the constitutional issue could not be asserted as a defense to the criminal charge, an absence of any opportunity to assert the constitutional issue in the state court. The present case, in contrast, involves the validity of a pretrial hearing that has *already taken place.* The plaintiffs attack that hearing as one not in conformity with the procedural due process requirements of the Fourteenth Amendment and attack the statute under which the hearing was held as being constitutionally infirm in several respects. The critical difference with *Gerstein,* of course, is that all of the constitutional issues the federal plaintiffs now desire to have resolved in this federal court could have been raised in the state court's suspension hearing—some, indeed, were so raised in every hearing by each federal plaintiff. In this Court's view, based upon information made available to the Court as of this date, it appears that the orders of the trial court resolving those issues adversely to the federal plaintiffs and suspending their licenses probably could have

been appealed, and in this respect, therefore, the present case is much closer to *Huffman* than to *Gerstein. See also, Moore v. Sims*, 442 U.S. at 431–32, 99 S.Ct. at 2381; *Juidice v. Vail*, 430 U.S. at 336–37, 97 S.Ct. at 1217–18.

For the reasons stated, this Court concludes that whether the suspension hearing is viewed as separate and distinct from the pending criminal actions or as a part of those state criminal proceedings, an order by this Court enjoining the defendants would be an order interfering with an "ongoing state judicial proceeding" as that term has been defined for purposes of the *Younger* abstention doctrine.

### 2. *Important State Interest*

As previously noted, the second prerequisite for the application of the *Younger* doctrine is that the ongoing state proceedings implicate important state interests. If, as the defendant Judges contend, the suspension hearing is part of an ongoing criminal proceeding, then there is no question that important state interests are implicated. Since *Younger v. Harris, supra,* there can be no challenge to a state's interest in "carrying out the important and necessary task of enforcing ... laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution." *Younger v. Harris*, 401 U.S. at 51–52, 91 S.Ct. at 754.

If, on the other hand, this Court accepts the plaintiffs' position that the suspension proceedings are civil in nature and separate from the pending criminal prosecutions, the record in the present case still indicates that important state interests are implicated by the suspension proceedings. The interest the state of Ohio seeks to further by the enactment of the challenged statute is the regulation of the privilege of operating motor vehicles upon the state's highways and the promotion of the physical safety and welfare of its citizens. The Supreme Court has specifically recognized the paramount interest of the state in preserving the safety of its public highways, and that Court has "traditionally accorded the states great leeway in adopting summary procedures to protect public health and safety. States surely have at least as much interest in removing drunken drivers from their highways as in summarily seizing mislabeled drugs or destroying spoiled foodstuffs." *Mackey v. Montrym,* 443 U.S. 1, 18, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321 (1979). *See also Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). In a recent Supreme Court opinion Justice O'Connor specifically noted the magnitude of the problem facing the states and the Supreme Court's awareness of that problem:

> The situation underlying this case—that of the drunk driver—occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the problem that the state courts have, has repeatedly lamented the tragedy. See *Breithaupt v. Abram*, 352 U.S. 432, 439 [77 S.Ct. 408, 412, 1 L.Ed.2d 448] (1957) ("The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield"); *Tate v. Short*, 401 U.S. 395, 401 [91 S.Ct. 668, 672, 28 L.Ed.2d 130] (1971) (BLACKMUN, J., concurring) (deploring "traffic irresponsibility and the frightful carnage it spews upon our highways"); *Perez v. Campbell*, 402 U.S. 637, 657 and 672 [91 S.Ct. 1704, 1715, and 1722, 29 L.Ed.2d 233] (1971) (BLACKMUN, J., concurring) ("The slaughter on the highways of this Nation exceeds the death toll of all our wars"); *Mackey v. Montrym*, 443 U.S. 1, 17–18 [99 S.Ct. 2612, 2620–21, 61 L.Ed.2d 321] (1979) (recognizing the "compelling interest in highway safety").

*South Dakota v. Neville*, 459 U.S. 553, 558–59, 103 S.Ct. 916, 920, 74 L.Ed.2d 748, 32 Cr.L.Rptr. 3047, 3048 (1983).

Thus, in the present case the driver's license suspension proceedings unquestionably implicate important state interests. Those interests in regulating the public

highways and in protecting the public safety are, moreover, closely tied to the criminal proceedings that have been initiated by the state of Ohio or its agents against the plaintiffs in this case. This is, therefore, the type of important state interest the Supreme Court has found to justify abstention by federal courts from enjoining ongoing state judicial proceedings. *See Moore v. Sims, supra; Juidice v. Vail, supra; Huffman v. Pursue, Ltd., supra.*

### 3. *Opportunity to Raise Constitutional Claims*

*Younger* abstention is appropriate as long as the state court proceedings offered the federal plaintiffs an opportunity to present their federal claims. *Juidice v. Vail,* 430 U.S. at 337, 97 S.Ct. at 1218. In *Moore v. Sims, supra,* the Supreme Court noted that "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." 442 U.S. at 426, 99 S.Ct. at 2379.

There is clearly nothing in O.R.C. § 4511.191 nor in the Ohio rules of practice that prevented the federal plaintiffs from presenting their constitutional claims to the state courts. Indeed, each federal plaintiff did interpose objection to the license suspension proceeding, and one has filed a motion to dismiss on constitutional grounds. The federal plaintiffs' complaint appears to be that they received little, if any, consideration of their constitutional objections from the defendant Judges and not that they were in any sense denied the opportunity to present their constitutional objections or to file appropriate motions based thereon or to appeal the suspension orders that were issued over their objections. Applicability of the *Younger* doctrine depends on the federal plaintiffs having the opportunity to present their constitutional claims to the state courts and not on the degree to which a state trial court deliberates regarding those claims or expounds on its reasoning for denying them. The important point is that there is nothing in Ohio's law that "clearly bars the interposition of the constitutional claims," although, concededly, it appears from the transcripts that certain of the defendant Judges treated those claims in a rather perfunctory manner.

### D. EXCEPTIONS TO THE YOUNGER DOCTRINE

■ The Supreme Court has noted that *Younger* principles do not apply, even where otherwise applicable, where the state proceedings are motivated by a desire to harass or are conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it. *Huffman v. Pursue, Ltd.,* 420 U.S. at 611, 95 S.Ct. at 1211; *Juidice v. Vail,* 430 U.S. at 338, 97 S.Ct. at 1218. Additionally, as this Court noted earlier, *Younger* principles do not apply if there exist other "extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Younger v. Harris,* 401 U.S. at 53, 91 S.Ct. at 755.

In the present case there is no indication, and the plaintiffs do not argue, that the state proceedings were initiated in bad faith or to harass. This Court also does not believe that O.R.C. § 4511.191(K) is on its face so patently unconstitutional that the third exception to *Younger* would be applicable to this case. It remains to be determined, therefore, whether "extraordinary circumstances" exist which would permit this Court to grant the injunctive relief requested in this case.

Plaintiffs assert that this case involves "extraordinary circumstances" because, as in *Gernstein v. Pugh, supra,* the plaintiffs are raising in this Court constitutional objections which cannot be raised in defense of the ongoing state criminal proceedings. Additionally, plaintiffs argue that the orders of the Municipal Court suspending their licenses are not appealable orders, or, if appealable, the pretrial time period of the license suspensions may cause the plain-

tiffs' cases to become moot before the plaintiffs are able to pursue state appellate remedies.

As discussed earlier in this opinion, there is nothing in *Gernstein* that precludes application of the *Younger* doctrine to the circumstances of the present case. To the extent *Younger* was considered at all in that decision it is found in a footnote to the effect that the District Court was not barred by the *Younger* doctrine from ordering a judicial hearing to be held on the question of probable cause when the state law did not provide for a pretrial hearing of any kind on this question. *Gernstein*, 420 U.S. at 108 n. 9, 95 S.Ct. at 860 n. 9. "As a result, a person charged by information could be detained for a substantial period solely on the decision of a prosecutor." *Gernstein*, 420 U.S. at 106, 95 S.Ct. at 859. Because no hearing was held and the detainment without probable cause was not a defense to the substantive crime with which a defendant was charged, such a defendant never had the opportunity under Florida law to assert his constitutional claims. The present case, as noted earlier, is entirely different. Here, the state affords the defendant a pretrial suspension hearing in which defendant may assert his constitutional claims. *Gernstein* dealt, of course, with the initial question of whether the *Younger* doctrine applied to the facts of that case. The Supreme Court having concluded it did not apply because of the absence of any way under state law to present the constitutional issues, it was not necessary to consider whether any exceptions to the *Younger* doctrine existed in that case.

The more troublesome question in the present case is whether the potential of the plaintiffs' constitutional claims in state court becoming moot prior to appellate review due to the limited period of pretrial suspension is the type of immediate, great and irreparable injury that constitutes an exception to the *Younger* abstention doctrine. As the Sixth Circuit has noted, there can be situations in which the special factors involved in a case combined with delay in a state's appellate procedure may cause the type of great and immediate irreparable injury that can be considered the basis for making an exception to the *Younger* doctrine. *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558 (6th Cir.1982).

In this case the federal plaintiffs, on the present state of the record before this Court, have not satisfied the Court that the Ohio judicial system does not afford the federal plaintiffs the opportunity for appellate review. As previously noted, plaintiffs *did* raise their constitutional issues, at least in part, during the trial court's suspension hearings, but they took no steps of any kind to appeal the suspension orders or to obtain any kind of relief in the appellate courts. Their explanation for this failure is that "Plaintiffs take the position that no final appealable order under Ohio law has been issued which would allow an appeal to another court in Ohio to raise the federal questions." (Supplementary Memorandum In Support of Plaintiffs' Motion for Temporary Restraining Order, p. 13.) While this may be plaintiffs' counsel's opinion based upon his interpretation of O.R.C. § 2505.02, it is not the opinion of the defendant Judges' counsel as represented to this Court. This Court cannot, based upon those representations and upon its own examination of O.R.C. § 2505.02, conclude with any certainty that plaintiffs' position on non-appealability of the suspension orders is correct.

Plaintiffs also assert that "there is not adequate time to pursue state appellate remedies, if any, that could have any meaningful effect in lessening the harm to the plaintiffs." (Supplementary Memorandum at p. 12.) This is simply an assertion of plaintiffs who, at this point in time, have made no effort of any kind to pursue *any* type of appellate remedy that may be available to them under Ohio's laws and rules of procedure. Nor have they satisfied this Court that no appellate court relief exists that could have a "meaningful effect in lessening the harm to the plaintiffs."

This Court is fully aware of the fact that a person whose right to operate a motor

vehicle has been suspended has indeed suffered an immediate loss of a protectable property interest. It does not follow, however, as a routine matter of course, that this alone—without more—constitutes the type of great and irreparable harm that justifies an automatic exception to the *Younger* doctrine.[9] The fact that the federal plaintiffs have suffered a loss of their driving rights as a result of decisions by the defendant Municipal Court Judges, possibly as a result of a failure of those trial court judges to correctly apply the constitutional requirements of the Fourteenth Amendment, is not the type of irreparable injury that justifies immediate federal court intervention in the state court proceedings. As the Supreme Court stated in *Huffman v. Pursue, Ltd.*, 420 U.S. at 609 n. 20, 95 S.Ct. at 1210 n. 20 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 484–85, 85 S.Ct. 1116, 1119–20, 14 L.Ed.2d 22 (1965)):

> The mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings.

The federal plaintiffs in the present case are in effect seeking a form of collateral review in the federal court of the decisions of the defendant state court Judges without any attempt to obtain a review of those decisions within the Ohio judicial system. "For better or for worse, the Supreme Court has decreed that constitutional violations in state trial settings must be first handled within the state system." *Parker v. Turner*, 626 F.2d at 10.

One final but very important observation must be made. It should be apparent that defendants have persuaded this Court that the established principles of the *Younger* doctrine are applicable to this case and that the federal plaintiffs have failed to convince this Court that any of the recognized exceptions to that doctrine can be found *on the present state of this record.* This latter conclusion is based upon this Court's belief that procedures exist in the Ohio judicial system to timely review and correct any erroneous rejection of the constitutional claims of the federal plaintiffs asserted in the trial courts of that state. There are thus no "exceptional circumstances" which would warrant federal injunctive relief at this time and on this record. It does not follow, in this Court's opinion, that federal relief is foreclosed forever. If it should appear that the Ohio judicial system does not afford these federal plaintiffs or state court defendants in comparable positions the opportunity to not only assert their constitutional claims in the state court but also to have those claims considered by the trial and appellate courts in a timely and meaningful manner, then such persons may very well be in a position of showing "exceptional circumstances" which would warrant federal injunctive relief. *Cf., Parker v. Turner*, 626 F.2d at 10. We decide today only that these plaintiffs on this record at this time have not persuaded this Court that those circumstances are present to the extent required to justify a departure from the doctrine of *Younger v. Harris* and its progeny.

9. *Martin-Marietta* is clearly distinguishable. That case involved a tender offer battle in which time was of critical importance in terms of which company would exercise control over the other. Any delay would have not only given the one company a great advantage over the other but also would have resulted in a permanent loss of the federal right being asserted. Of equal importance was the fact that the state court was applying a statute which, in light of a recent Supreme Court decision, may well have been "flagrantly and patently violative of express constitutional prohibitions," *Martin-Marietta,* 690 F.2d at 564, thus bringing the case within a recognized exception to the *Younger*

doctrine. Unlike *Martin-Marietta,* this Court cannot say at this time that delay in seeking appellate remedies in the present case will result in any permanent loss of the federal right being asserted, *e.g.,* the right to a due process hearing or the right to have the state statute held void for vagueness. Also, in the present case, this Court cannot at this time say that the Ohio statute is "flagrantly and patently violative of express constitutional provisions" within the scope of the recognized exception applied in the *Martin-Marietta* case. Indeed, the federal plaintiffs do not even assert this as a basis for finding an exception to the *Younger* doctrine in the present case.

## V. CONCLUSION

For the reasons set forth in this Opinion, the motion of defendants to dismiss this action on the ground that the *Younger* doctrine requires that this Court abstain from interference with pending state court judicial proceedings is sustained. This action is therefore dismissed, but the dismissal is expressly without prejudice.

IT IS SO ORDERED.